# CHARLESTON.

RUST ENGINEERING COMPANY *v.* RANDOLPH SMOKELESS
COAL COMPANY *et al.*

(No. 5963)

Submitted November 23, 1927.   Decided January 31, 1928.

ATTORNEY AND CLIENT—*Settlement of Litigation by One of Parties
and Counsel for Other Held Binding on Both.*

A case in which a settlement of the controversy by one
of the parties and counsel for the other is binding upon both.
(Attorney and Client, 6 C. J. § 175.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Appeal from Circuit Court, Randolph County.

Suit by the Rust Engineering Company, in the nature of a
creditors' suit, against the Randolph Smokeless Coal Company
and others.   From a decree below construing a contract set-
tling the litigation the Citizens' National Bank of Philippi and
others appeal.

*Reversed.*

*Spears & Irons, W. Bruce Talbott* and *Wm. T. George,* for
appellants.

*D. H. Hill Arnold,* for appellee Commercial National Bank
of Youngstown.

LITZ, JUDGE:

Randolph Smokeless Coal Company (a corporation), own-
ing and operating coal mining property in Randolph county,
West Virginia, and W. J. Butler of Youngstown, Ohio, entered
into a written contract August 6,-1918, whereby it sold and
agreed to deliver to him certain coal, in payment of which he
agreed to advance the sum of $25,000.00.   W. T. George, a
stockholder of the corporation, owning a large amount of
mortgage bonds theretofore issued by it, delivered to Butler,
at the time of the execution of the contract, and in accordance

with the terms thereof, $50,000.00 of these bonds to be deposited by him in the Commercial Bank of Youngstown, Ohio, for the purpose of guaranteeing performance of the contract on the part of the coal company. In violation of the agreement Butler transferred the bonds to the Youngstown bank, August 10, 1918, as collateral security for the payment of a note of $25,000.00 that day executed to the bank by himself and W. H. Heedy, one of its directors. Soon thereafter this cause, in the nature of a creditors' suit against the Randolph Smokeless Coal Company, was instituted in the circuit court of Randolph county. Pursuant to a decree of reference entered herein, June 11, 1919, the commissioner found and reported that the Commercial National Bank was not a holder in due course of said bonds and that the same were the property of W. T. George. A decree was entered May 2, 1921, sustaining exceptions by the bank to the report of the commissioner and decreeing that it was a holder in due course of said bonds, entitled to participate in the assets of the coal company to the extent of its debt against W. J. Butler and W. H. Heedy, amounting to $28,962.50. W. T. George obtained an appeal from this decree May 26, 1921, and later filed in the circuit court a petition in the cause charging that Heedy was solvent and knew, at the time of the execution of the note, that George was the owner of the bonds, and that Butler did not have authority to transfer them to the bank; and praying that he be subrogated to the rights of the bank against Heedy and Butler on the said note. The sale of the property belonging to the coal company having been decreed for the payment of its debt, A. M. Cunningham, A. M. Henderson, T. W. Miller, Charles V. Cushaw and W. T. George entered into a written contract, dated October 20, 1921, whereby they agreed (1) that the property be purchased at the judicial sale, for their joint benefit, in the name of A. M. Cunningham, Trustee, at the price of $55,000.00; (2) that in the distribution of the purchase price at least $18,000.00 thereof be paid to the Commercial National Bank and the residue to W. T. George after payment of costs of the suit and other specified claims against the coal company; (3) to organize a corporation, of a capital stock not exceeding

$150,000.00, to take over the property; (4) to issue stock of such corporation to the bank for the balance of its debt; and (5) that the appeal and petition of George be dismissed. The contract was first signed by W. T. George in this State and later by the other parties at the office of A. M. Anderson, Youngstown, Ohio, in the presence of H. W. Heedy. The property was purchased as contemplated at the price of $55,000.00 in the name of A. M. Cunningham, Trustee, on behalf of himself and the other parties to the contract, and George promptly dismissed his appeal and petition as agreed. A. M. Cunningham and A. M. Anderson were attorneys at law representing the Youngstown bank in the assertion of its claim to the bonds, and Charles V. Cushaw was one of its directors.

By writing, dated June 30, 1923, George assigned to the Citizens National Bank of Philippi, Philippi, West Virginia, all moneys to which he was entitled from said sale of the property belonging to the Randolph Smokeless Coal Company, notice of which assignment was served July 28, 1923, on D. H. Hill Arnold and F. E. Tallman, special commissioners appointed to make the sale and distribute the proceeds.

Upon the filing of a report by the special commissioners stating that a dispute existed between W. T. George and the Philippi Bank on the one part and the Youngstown Bank on the other concerning the legal effect of the contract of October 20, 1921, in so far as it provides for the division of the proceeds from the sale of the property belonging to the coal company between George and the Youngstown Bank, a decree was entered March 5, 1925, requiring the parties named to appear and assert their rights. Accordingly, pleadings were filed and proof adduced upon the issue as to whether the contract of October 20, 1921, is binding upon the Youngstown Bank, whose contention is that its attorneys, A. M. Cunningham and A. M. Henderson, were not authorized to compromise its claim, and that it did not receive any information concerning the contract until March, 1924. Each of these attorneys denies that he was authorized by the bank to compromise with George. C. H. Kennedy, president of the bank, also denies

that he gave either of them such authority. He admits, however, that the matter of asserting any claim to the bonds was left to the decision of Heedy, who was liable to the bank·on the note executed jointly by himself and Butler. When asked under what authority Henderson was acting as attorney for the bank in the suit, Kennedy replied: "Well I think he was acting under Mr. Heedy's authority, that is Mr. Heedy, *I trusted this matter with Mr. Heedy, it was Mr. Heedy's affair* and I understood that Mr. Henderson was representing—• representing us in this matter." After the contract had been signed in this State by George, Cunningham took it to Youngstown for the approval of the other parties interested. After arriving at Youngstown and before the contract was signed by any of the other parties the following telegraphic communications took place between George and Cunningham:

October 22, 1921.

W. T. George,
Philippi, W. Va.

The eighteen thousand dollars must bear interest as per the decree. * * * Please confirm by wire here immediately 208 Dollar Bank Building.

A. M. Cunningham.

October 22, 1921.

Hon. A. M. Cunningham,
208 Dollar Bank Building,
Youngstown, Ohio.

Will consent to terms of telegram. Answer if closed.

W. T. George.

October 22, 1921.

Hon. W. T. George,
Philippi, W. Va.

Objection paragraph four. Must be made clear as per our understanding. Heedy and bank shall have eighteen thousand out of sale of fifty-five thousand. Confirm quickly.

A. M. Cunningham.

October 22, 1921.

Hon. A. M. Cunningham,
Room 208 Dollar Bank Bldg.,
Youngstown, Ohio.

I understand Bank and Heedy to get eighteen thousand from sale of fifty-five thousand per our agreement.

W. T. George.

W. H. Heedy knew of the exchange of telegrams between George and Cunningham relating to that part of the agreement which provided for the compromise of the controversy between George and the Youngstown Bank and was also present when the contract was considered and signed by Cunningham, Henderson, Miller and Cushaw. The evidence, in our opinion, clearly shows acquiescence on the part of Heedy binding the bank in the execution of the contract by its attorneys, Cunningham and Henderson. No objection was raised to the contract by either Heedy or the bank until immediately preceding the filing of the report of the special commissioner, March 5, 1924, years after George had complied with his part of the agreement by dismissing the appeal in this Court and his petition in the circuit court. It was his "affair". He employed counsel with the consent of the bank to prosecute the claim in its name for his own protection. He was, therefore, authorized in his own name or through counsel to compromise the claim, and the admitted facts and circumstances impel the conclusion that Cunningham and Henderson were acting under his express or implied authority from him in agreeing to the settlement.

The decree of the circuit court will be reversed and a decree entered by this Court directing the special commissioners to pay to the Commercial Bank of Youngstown $18,000.00 from the proceeds of the sale of the property belonging to the Randolph Smokeless Coal Company, and the residue to W. T. George, according to the terms of the contract, subject to the rights of the Citizens Bank of Philippi.

W. H. Heedy knew of the exchange of telegrams between George and Cunningham relating to that part of the agreement which provided for the compromise of the controversy

between George and the Youngstown Bank and was also present when the contract was considered and signed by Cunningham, Henderson, Miller and Cushaw. The evidence, in our opinion, clearly shows acquiescence on the part of Heedy binding the bank in the execution of the contract by its attorneys, Cunningham and Henderson. No objection was raised to the contract by either Heedy or the bank until immediately preceding the filing of the report of the special commissioner, March 5, 1924, years after George had complied with his part of the agreement by dismissing the appeal in this Court and his petition in the circuit court. It was the ''affair'' of Heedy, who had been ''intrusted'' with the whole matter. He employed counsel with the consent of the bank to prosecute the claim in its name for his own protection. He was, therefore, authorized in his own name or through counsel to compromise the claim, and the admitted facts and circumstances impel the conclusion that Cunningham and Henderson were acting under express or implied authority from him in agreeing to the settlement. If Heedy or someone else in authority was not directing the program of settlement, at whose instance did Cunningham, after reaching Youngstown and before further execution of the contract, communicate with George to make sure that the bank would receive in the settlement $18,000.00?

The decree of the circuit court will be reversed and a decree entered by this Court directing the special commissioners to pay to the Commercial Bank of Youngstown $18,-000.00 from the proceeds of the sale of the property belonging to the Randolph Smokeless Coal Company, and the residue to W. T. George, according to the terms of the contract, subject to the rights of the Citizens Bank of Philippi.

*Reversed.*