N. F. RADER, *et al.*

*v.*

HERBERT CAMPBELL, *et al.*
(No. 10138)

Submitted May 25, 1950.   Decided May 29, 1950.

HAYMOND, JUDGE, concurring.

*R. A. Clapperton,* for appellants.

*G. D. Herold, Wolverton & Callaghan,* for appellees.

486

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Nicholas County by N. F. Rader and Carl Rader against Herbert Càmpbell and Howard Campbell, individually and as partners trading and doing business as Campbell Brothers Garage, for the purpose of specifically enforcing an alleged agreement in settlement of a pending action in ejectment between the same parties as plaintiffs and defendants. From a decree granting the relief prayed for this appeal was granted the defendants below.

It appears that Howard Campbell and Herbert Campbell owned and operated Campbell Brothers Garage on Main Street in the Town of Summersville, their place of business being located upon land owned by them jointly. In 1946 they decided to enlarge their building and in doing so became the defendants in an action of ejectment brought by N. F. Rader and Carl Rader, the owners of adjoining real estate that had a common side line with the Campbell lot. In addition to bringing an ejectment action based upon an alleged encroachment upon their boundary, the Raders proceeded in chancery and procured a temporary injunction which failed of effect because the required bond was not given. The record is not clear but apparently after the institution of the ejectment action in 1946 Howard Campbell and Herbert Campbell, the injunction having not taken effect, continued the construction of the addition to their building as originally planned and completed it in that manner. At any rate, nothing was done in the action in ejectment until the May term of 1948, at which time, upon the day that the case was set for trial upon the court's trial docket, the plaintiffs and the defendants appeared with their respective counsel, G. D. Herold and Wolverton & Callaghan for the plaintiffs and C. E. Mahan and R. A. Clapperton for the defendants. It was then announced in open court that the parties to the action were undertaking to negotiate a settlement and the court was requested to place the case on its open docket, which it did. This occurrence took place at the morning opening of court and immediately thereafter the lawyers involved conferred at length, with the result that

surveyors were employed to locate and describe the disputed boundary line, C. H. Craig of Summersville representing the Campbells and a Mr. Baker of Elkins representing the Raders. The parties litigant did not deal directly with each other, but it is shown circumstantially, and in many instances directly, that they were kept familiar with the progress of negotiations and with the work being done, particularly by the surveyors, whose first two lines were rejected as being unsatisfactory. Craig, the surveyor who represented the Campbells, testified that Howard Campbell came upon the property and discussed with him the matter of the lines' location and expressed dissatisfaction with one of the surveys, evidently one of two abandoned tentative lines. The work continued until late afternoon, at which time a line satisfactory to the attorneys both for the plaintiffs and the defendants, to the Raders and Herbert Campbell, was agreed upon. Neither the expressed assent nor dissent of Howard Campbell appears. Both of the attorneys representing Howard Campbell and Herbert Campbell testified that they proceeded under the belief that they were fully authorized to conclude a settlement of the action in ejectment on behalf of their clients. Both knew that this required special authorization, granted expressly or by implication. At any rate, that afternoon Mr. Mahan returned to his home in Fayetteville and the following day Mr. Callaghan drafted a written instrument in the form of a deed that he caused to be delivered to Mr. Clapperton, who mailed it to his co-counsel for approval. After making several immaterial pencil changes Mr. Mahan returned the paper to Summersville and after it had been executed by the Raders, Clapperton undertook to have the Campbells do likewise. After examining the paper Herbert Campbell stated that it was in accordance with his understanding of the agreement arrived at. Howard Campbell refused to execute because he said it was not in conformity to the agreement, stating no definite reason for that conclusion. Attributing his refusal to that Howard Campbell, Herbert Campbell likewise refused to execute the paper locating the disputed

boundary line and thereby settling all controversy in the action of ejectment.

Defendants below assign as error first, that the agreement was not entered into by the parties litigant but was made by their attorneys without special authorization and therefore without authority; second, that there was no binding consideration; and third, that having been orally made it was not proveable under Code, 36-1-3. We will discuss these questions in the inverse order of their statement.

The circumstances of this case make it difficult to reach the conclusion that Howard Campbell and Herbert Campbell by agreeing to execute the deed fixing the boundary line were agreeing to actually convey land to N. F. Rader and Carl Rader. To the contrary, they seem to have been *receiving* the land in dispute upon which they had built. They were paying a considerable price to the Raders. Conceding that the location and adjustment of a disputed boundary line is a "contract for the sale of land" within the purview of Code, 36-1-3, which is quite doubtful, (See 8 Am. Jur. 797) we are then confronted with the fact that the question of the so called "statute of frauds" was not raised in any manner in the court below, and with the further fact that later decisions of this Court have, without reference to them, considerably modified the rule laid down in *McClanahan* v. *Coal & Mining Co.,* 74 W. Va. 543, 82 S. E. 752; *Alkire* v. *Orchard Co.,* 79 W. Va. 526, 91 S. E. 384, and *Kennedy* v. *Burns,* 84 W. Va. 701, 101 S. E. 156, to the general effect that the statute of frauds may be proved under the general issue and consequently may be relied upon for the first time in this Court. The syllabus in the case of *Forman* v. *Smith,* 102 W. Va. 539, 135 S. E. 653, reads as follows:

> "The statute of frauds need not be specially pleaded, unless the party relying thereon admits making the contract; but in order to avail himself of its benefits he must in some manner distinctly bring the statute to the attention of the court, otherwise it will be considered as waived."

The second syllabus in *Matney* v. *Blakely*, 97 W. Va. 291, 124 S. E. 918, reads as follows:

"A party who relies upon the statute of frauds to avoid his contract must in some manner by his pleadings bring it to the attention of the trial court, otherwise it will be considered as waived."

See also *Jones* v. *Shipley*, 122 W. Va. 65, 70, 7 S. E. 2d 346.

Here the statute of frauds was in no way called to the attention of the trial chancellor. It was raised for the first time in this Court. Although in strict logic the denial of an enforceable contract might be considered as including the statute of frauds, we believe that our later cases giving effect to the well established principle that this Court will not, except in jurisdictional questions, upon review consider assignments of error on points not passed upon in the court below, offer a much sounder ground. We therefore hold that the defendants below have waived the question of the statute of frauds.

Plainly there is no merit in the question of lack of consideration. The agreement represented the settlement of pending litigation over the ownership of real estate of some value. Since the action of ejectment did not proceed to judgment it cannot be determined with precision from the showing of this record from whom and to whom and in what measure the consideration passed. That is not necessary.

But has there been proof of an oral contract sufficient to sustain a decree that it be specifically performed? We are of the opinion that there has been. Howard Campbell and Herbert Campbell were partners and had been for a number of years. Howard Campbell was actively conducting his own independent business and Herbert Campbell had active charge of Campbell Brothers Garage, whose building was involved, in every respect. That circumstance considered together with the undoubted fact that Howard Campbell was fully informed as to the happenings in the court room and on the land, including the surveying and the location of the line, gives rise to cir-

cumstances which, in our opinion, fully justified the trial court in disbelieving his denial that he, at least circumstantially and with full knowledge, expressed his agreement. Herbert Campbell states that the contract was in accord with his understanding. Howard Campbell does not state in what respect it departed from his.

It is agreed that the general employment of a lawyer in a pending case does not clothe him with authority to settle or compromise. However, that authority may be conferred by implication and, indeed, in some instances by clothing an attorney with apparent authority. *Engineering Co. v. Coal Co.*, 105 W. Va. 111, 141 S. E. 518; *Dwight v. Hazlett*, 107 W. Va. 109, 147 S. E. 877, 66 A. L. R. 102 and footnote. Here both Clapperton and Mahan state that they thought they had express authority to represent the Campbells in locating the disputed boundary line and in agreeing to pay one thousand dollars to the Raders. They conducted the negotiations under that belief. C. E. Mahan withdrew from the employment promptly upon being informed that Howard Campbell refused to comply with what Mahan considered a binding undertaking. The trial chancellor could have well believed that he did in fact have express authority to act for both of the Campbells.

The decree of the Circuit Court of Nicholas County is affirmed.

*Affirmed.*

HAYMOND, JUDGE, concurring:

I concur in the decision of this Court in affirming the decree of the circuit court granting specific performance of the oral contract involved in this suit. I do not, however, accept Point 2 of the syllabus, in the form in which it appears, as a correct statement of the law. It is incomplete, unsatisfactory and misleading. In its present imperfect form it merely says, in effect, that, if the defense of the statute of frauds is not relied upon as a defense, an oral agreement to execute a deed in the settlement of a pending action of ejectment by locating a disputed boundary line may be specifically enforced, when, in fact, such an agreement may not be specifically performed, unless

the requisites of the remedy of specific performance are also present. As stated, this point of the syllabus conveys the impression that an oral agreement, as to which the statute of frauds is not interposed as a defense, may, without more, form the basis of a decree of specific performance. In short, if the statement in the syllabus means only what it actually says, it is manifestly incorrect because it omits any reference to or inclusion of the numerous essentials which much attach to or exist in connection with an oral agreement in order to obtain the relief afforded by the equitable remedy of specific performance.

To obtain specific performance of a valid oral agreement the agreement must be complete, certain and fair. There must also be mutality of obligation and remedy, lack of an adequate remedy at law for him who seeks this relief in equity, and absence of inequity to him against whom such relief is sought. See 49 Am. Jur., Specific Performance, Sections 21, 22, 46, 93; 58 C. J., pages 849 to 850, 929 to 933; *Hissam* v. *Parrish,* 41 W. Va. 686, 24 S. E. 600, 56 Am. St. Rep. 892; *Hastings* v. *Montgomery,* 95 W. Va. 734, 122 S. E. 155; *Hermann* v. *Goddard,* 82 W. Va. 520, 96 S. E. 792; *Crawford* v. *Workman,* 64 W. Va. 10, 61 S. E. 319. In *Wegmann* v. *Clark,* 94 W. Va. 364, 118 S. E. 517, this Court, enumerating some of the essentials of specific performance said: "To justify the relief of specific performance of a parol agreement relating to real estate, three things, as the books say, must concur: first, the agreement relied on must be certain and definite in its terms; second, the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; third, the agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation."

The vice of Point 2 of the syllabus, in the form in which it is expressed, is that it takes no account of the effect of the absence or the presence of any of the requisites of specific performance. If any of them is not present, an oral contract, though valid and binding, will not be spe-

cifically enforced. Though it is not necessary, or even desirable, that the syllabus in question should expressly enumerate or specifically mention the presence of the essential requirements for specific performance of an oral agreement, it should, in my judgment, state generally that the particular oral agreement, as to which the statute of frauds is not interposed as a defense, may be specifically enforced if the requisites of specific performance are present and fulfilled. As Point 2 of the syllabus, as written, is incomplete and thus unsatisfactory, I do not accept it as sound or correct. In consequence I file this concurring note for the purpose of calling attention to the defect in that point of the syllabus and suggesting the manner in which it could have been corrected and rendered legally sufficient.