357 S.E.2d 236

**Curtis WADDELL, Executor of the Estate of Virgie Belle Brinkley**

v.

**Albert Troy WADDELL.**

**No. 17204.**

Supreme Court of Appeals of West Virginia.

April 2, 1987.

Rehearing Denied June 3, 1987.

Joseph A. Colosi, Welch, for appellant.

Randal W. Roahrig, Princeton, for appellee.

## PER CURIAM:

The appellant, Albert Troy Waddell, appeals from a final order of the Circuit Court of Mercer County entered on November 5, 1985 denying his motion to set aside a final estate settlement order entered by the court on January 11, 1985. The court held that the motion was untimely and without merit. For the reasons set forth below, we affirm.

This is a dispute over the disposition of property that belonged to the parties' mother, Virgie Belle Brinkley, now deceased. On January 10, 1984, Curtis Waddell, the appellee, filed suit against the appellant and Mercer County Bank alleging that during the six months prior to the suit, Mrs. Brinkley had been incompetent and that during that time Albert Waddell had taken advantage of his mother by causing her to convey certain real property to him and by adding his name as a joint tenant to a bank account containing approximately $50,000. On January 23, 1984, the court entered a temporary order prohibiting the bank from disbursing the funds in question until a full hearing could be held. Prior to the hearing, however, the parties reached a settlement and on March 12, 1984, an order was entered holding that the bank account in question was to be solely in the name of Mrs. Brinkley and that she was the only person authorized to withdraw money from the account. The court made no findings with regard to the deed alleged to have been obtained by the appellant during the period of Mrs. Brinkley's incompetency. The deed related to property described as Lot 13, Section 501 in the City of Princeton. Mrs. Brinkley had purchased the property on April 5, 1977 and she and her husband lived there until his death in 1982. Mrs. Brinkley conveyed this property to her son, Albert, the appellant, by deed dated September 25, 1981 for the sum of $10,000. The deed was placed in a safe deposit box and was not recorded until December 7, 1983.

Mrs. Brinkley died on June 28, 1984. She left a will wherein she devised all her property unto her ten children to be shared equally. On September 21, 1984, Curtis Waddell, as executor of the estate, filed a complaint in the Circuit Court of Mercer County alleging that the estate was penniless due to the conduct of the appellant and praying that an injunction be issued restraining the appellant from disposing of the monies he had obtained from his mother's accounts and that the deed executed by Mrs. Brinkley conveying her homeplace to Albert be set aside. In support of the prayer, Curtis Waddell alleged that his brother, Albert, had: coerced and exercised undue influence upon their mother within three weeks of the March 1984 order to cause her to remove $41,849.74 from her account at the Mercer County Bank and transfer it to a joint account with Albert at the Bank of Tazewell; on March 29, 1984 withdrawn $15,000 from the account at the Bank of Tazewell; on April 24, 1984 withdrawn $26,000 from the same account; and on June 22, 1984 closed out the account by withdrawing $849.74. The complaint alleged that during this period Mrs. Brinkley was incompetent and unable to handle her affairs. It was further alleged that the deed conveying Mrs. Brinkley's homeplace to the appellant was invalid for lack of delivery and that the appellant failed to pay the $10,000 consideration stated in the deed.

On the basis of the testimony of Curtis Waddell and the affidavit of Dr. Steve Misak attesting to the incompetency of Mrs. Brinkley during the period in question, the court entered a temporary order on September 21, 1984, enjoining Albert Waddell from removing or disposing of any of the money removed from the account at the Bank of Tazewell and further enjoining him from transferring or disposing of the real estate and its contents. The court entered a similar order on September 24, 1984 restraining the appellant from removing any monies on deposit at Mercer County Bank and from removing any items in any safe deposit boxes in that bank.

Apparently the parties attempted to reach a settlement in the case. The settlement discussions progressed and in December of 1984 an order was actually prepared but because the parties could not agree on its contents, was never entered. On January 11, 1985 a hearing was held pursuant to a motion filed by the appellant to enforce settlement and dismiss, or in the alternative, for release and dissolution of the prior injunctive orders. A short time before the hearing on January 11, the house on Lot 13 of Section 501 was totally destroyed by fire. Prior to the hearing, the parties again attempted to reach a settlement under this new set of facts. All of the heirs were present with the exception of two sisters whose position was that they would agree to the proceeds of the estate going to Albert Waddell. At the hearing, Thomas Czarnik, Albert Waddell's attorney, informed the court that a settlement had been reached:

> The settlement is that there was a deed by Virgie Belle Brinkley, formerly Waddell, to Albert Waddell that was for a homeplace located in Princeton ... Sunday last the house burned while Mr. Waddell was sleeping at 3:00 A.M. in the morning. Mr. Waddell has agreed that proceeds of the insurance money are to be turned over to the estate and paid to the estate and be divided and that the proceeds representing Al Waddell's personal property loss would go to Al Waddell since he was living there. Under a Court order, C.D.'s, representing funds that were intermingled and intermixed, that those C.D.'s for $55,000.00 plus interest, less any penalty, that out of that, $25,000.00 would be paid directly to Al Waddell and the balance of that would be paid to the estate. The $25,000.00 is a complete settlement. Mr. Al Waddell will pay his attorney fees and the Court costs will be divided equally between the parties. The land will be sold in the best available way and the proceeds will be divided according to the terms of the will.

After he apprised the court of the settlement, Mr. Czarnik stated: "For the purpose of the record I would ask if any of the parties present disagree with this settle-

ment?" The transcript reveals: "(Each party present indicated that they did not disagree with the settlement.)" The court confirmed the settlement and dissolved the previous injunctive orders entered on September 21, 1984 and September 24, 1984. The appellant was ordered to dispose of the money involved according to the terms of the settlement. Following the hearing, the parties went to the Mercer County Bank and in compliance with the order the appellant transferred approximately $28,000.00 to the appellee as executor of the estate.

In the ensuing months, the parties went through settlement negotiations with the insurance company. On April 8, 1985, the appellant's attorney received a check from the insurance company in the amount of $64,616.93, payable to both appellant and his counsel. When counsel requested that appellant endorse the check over to the estate as per the settlement agreement, the appellant refused and fired his attorney. On April 10, 1985, the circuit court granted the appellee's motion to attach the insurance proceeds until the matter could be resolved by the court.

On July 19, 1985, Curtis Waddell filed a petition to enforce the settlement entered into on January 11, 1985. In the petition, he alleged, *inter alia,* that the appellant had failed to comply with the settlement by refusing to turn over the insurance check to the estate for proper distribution. On August 5, 1985 the appellant, who had since obtained other counsel, filed a motion to set aside the settlement agreement and judgment order confirming the agreement. In his motion, the appellant alleged that he was either misinformed or did not fully understand the agreement and that he never intended to relinquish his interest in the real estate his mother had conveyed to him in 1981.

The court made an initial ruling denying the appellant's motion but did allow the appellant to present testimony in support of the motion. On September 23 and 24, 1985, that testimony was taken. Thomas Czarnik, the appellant's former attorney, was called as an adverse witness. Mr. Czarnik testified that he was fired by the

appellant on April 28, 1985; that the appellant first hired him in July 1984 after his mother's death to help him get the utilities turned back on and to assist him in obtaining insurance on the house in which he had lived with his mother before her death; that whenever the subject arose during the following months the appellant indicated to him that he wanted to keep the house; and that although the appellant was of below average intelligence, he felt that he "was able to get through to him in a way he could understand." Mr. Czarnik further testified that although there was no written agreement prior to appearing in court that day, the appellant agreed, on January 11, 1985, shortly before the hearing, to relinquish the house in exchange for the cash settlement. On cross-examination, Mr. Czarnik testified that he had discussed settlement of the case with the appellant prior to January 11, 1985 and explained the specific terms of the settlement to him on that date prior to going into court. When the settlement was announced in court, the appellant said nothing to indicate he disagreed with it or did not understand the terms.

Albert Waddell, the appellant, also testified at the hearing. He stated that he was injured in a bicycle accident when he was twelve years old and that he had not returned to school after the accident. He also testified that he had lived with his mother for several years before her death and that he had paid her $10,000 for the property in question where they lived. The appellant further testified that he did not give his attorney, Mr. Czarnik, permission to "bargain away" the real estate and that he never intended to give up possession of the house. He testified that he did not hear the property mentioned when his attorney recited the settlement in open court and that if the house was included in the settlement, he did not understand it to be. He first realized that the house was included in the agreement on April 8, 1985, when the insurance check arrived and his attorney asked him to endorse it over to the estate.

Bob Waddell, the twin brother of the appellant, testified that prior to January

11,.1985, he did not know the appellant was going to give up the house. He also testified that although he heard the agreement when it was announced in court, he did not discuss it with the appellant until April when he advised him not to accept the settlement. Mr. Waddell also testified that he once told Mr. Czarnik that he was confusing the appellant and approaching him in the wrong manner.

Following the taking of this testimony, the court entered an order on November 5, 1985, denying the appellant's motion to set aside the settlement as being untimely and without merit, finding that the settlement agreement "was knowingly and intelligently entered into and the same is binding upon the parties."

■ The only question before us is whether the court should have granted the appellant's motion for reconsideration which was actually a motion to set aside the settlement agreement. We begin by recognizing that motions made under Rule 60(b) are addressed to the sound discretion of the trial court. *State ex rel. Miller v. Sencindiver*, 170 W.Va. 288, 294 S.E.2d 90 (1982); *See Gaines v. Drainer*, 169 W.Va. 547, 289 S.E.2d 184 (1982). In *Intercity Realty Company v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970) we stated: "[I]t has been widely held that a motion to vacate a judgment under Rule 60(b) is addressed to the sound discretion of the court and that an abuse of such discretion must be shown before denial of the motion will be overturned on appeal." Hence, our standard of review is that the court's ruling on such a motion will stand unless it constitutes an abuse of discretion. In addition, an appeal of a denial of a motion under Rule 60(b) puts into question only the order of the denial itself and not the substance supporting the underlying judgment. *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

■ We move now to the question of whether the circuit court abused its discretion in finding that the appellant's motion was without merit and that the estate settlement was knowingly and intelligently entered into. Even though the court was of the view to deny the motion for reconsideration, in compliance with the liberal purpose of Rule 60(b), testimony on the issues was allowed. After listening to the evidence and observing the demeanor of the witnesses, the court, in full awareness of the issues and disputes involved, denied the motion. We cannot say that it was an abuse of discretion to do so.

The appellant relies on *Kelly v. Belcher*, 155 W.Va. 757, 187 S.E.2d 617 (1972) where we reversed an order of the circuit court denying a motion to set aside and vacate an order of dismissal because the evidence failed to show that either of the two plaintiffs was informed of the terms of a compromise before it was concluded by the attorneys. Appellant relies specifically on Syllabus Point 1 of that case where we recognized the general rule that "an attorney who is clothed with no other authority than that arising from his employment as attorney has no implied power by virtue of his general retainer to compromise and settle a claim or cause of action of his client." The appellant asserts that his former attorney, Thomas Czarnik, lacked the authority to enter into the January 11, 1985 settlement. Mr. Czarnik testified that he informed the appellant prior to the hearing on January 11, 1985, of the terms of the settlement and that the appellant voiced no disagreement with those terms. The court clearly placed more credence in Mr. Czarnik's testimony than it did in the appellant's. We cannot say that the court's decision was contrary to the weight of the evidence on this point.

We conclude, therefore, that there was no abuse of discretion by the court in denying the appellant's motion to set aside the settlement agreement. Accordingly, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.