HARTFORD ACCIDENT & INDEMNITY CO., Appellant, v.
BEAR BUTTE VALLEY BANK, Respondent.

(257 N. W. 642.)

(File No. 7715. Opinion filed December 3, 1934.)

*H. F. Fellows,* of Rapid City, for Appellant.
*Atwater & Helm,* of Sturgis, for Respondent.

RUDOLPH, J.   The Montana-Dakota Power Company is a public utilities company, serving a large number of towns in Western South Dakota with natural gas, and maintains its principal office in the territory at Rapid City.   The company maintained an office in Sturgis, which town it served, and one W. C. Baker was the manager of the Sturgis office.   In the Sturgis office gas equipment was sold at retail, and all bills incurred in the consumption of gas and purchases made in the vicinity of Sturgis were paid at the Sturgis office.   Baker was in general charge of this office, and generally conducted the business of the company in and about Sturgis.   The company permitted Baker to accept in payment of company accounts either the check of the customer paying the account or cash.   The company furnished Baker with a rubber stamp for the purpose of indorsing checks accepted by Baker in payment of company accounts, which rubber stamp had thereon the words: "Montana-Dakota Power Company, W. C. Baker, Manager."   It will be noted that this rubber stamp furnished Baker by the company in no manner purported to qualify the indorsement, but the wording thereon constituted an unqualified indorsement when stamped on the check.   Baker had been in charge of the Sturgis office for something more than a year prior to the time in question, and, prior to Baker's coming to Sturgis, there had been other managers of that office acting in the same capacity as Baker. Baker and all other managers of the Sturgis office had always used the same general form of indorsement in indorsing checks received in payment of company accounts (sometimes using the rubber stamp, other times pen and ink), and many of these checks were drawn on the defendant bank and honored and paid by that bank. The defendant bank also knew of Baker's authority to accept cash in the payment of company accounts.   The defendant bank, however, was not the bank in which the company carried its account

at Sturgis. This action involves three different checks, two of which were made payable to the Montana-Dakota Power Company, and the third to the Black Hills Utility Company, under which name the Montana-Dakota Power Company was at one time operating. The checks were indorsed by Baker with an unqualified indorsement. Whether he used the rubber stamp on these particular checks does not appear, but, in any event, the indorsement was in the same form. These three checks were drawn on the defendant bank, there presented by Baker, and the money thereon paid to Baker, which money Baker embezzled. The plaintiff indemnity company paid the losses suffered by the power company on account of this embezzlement, and upon the assignment of the claim to it the indemnity company brought this action against the defendant bank.

It is the contention of plaintiff that Baker was without authority to indorse these three checks and receive the cash therefor, and that the bank, upon its refusal to surrender them to the plaintiff, became liable as a converter thereof. Baker had no written authority, and the testimony of the officers of the Montana-Dakota Power Company disclosed that his only authority was to indorse the checks for the purpose of having the proceeds deposited to the company account in the bank at Sturgis in which this account was kept. The case was tried to the court, findings of fact, conclusions of law, and judgment were in favor of the defendant, and the plaintiff appeals from the judgment and order entered denying its motion for a new trial.

■ In view of the decision of this court in the case of Dakota Radio Apparatus Company v. First National Bank of Rapid City, 60 S. D. 251, 244 N. W. 351, we deem it advisable to point out that this action is not one based upon the checks as such and their alleged acceptance by the drawee bank, but is rather an action seeking to recover for an alleged conversion of the check by the bank. The case just above referred to was a case involving a fact situation in some respects similar to the fact situation here presented. In that case the drawee bank cashed a check and charged it to the account of the drawer upon the unauthorized indorsement of the agent of the payee. The case was submitted and argued in this court upon the theory that the bank, upon which the check was drawn, accepted the check by paying and stamping

it paid and charging it to the drawer's account, and that by so doing it became liable upon the check as such. This court followed the great weight of authority and held that the payment of a check upon a forged or unauthorized indorsement and stamping it paid did not constitute an acceptance, and, since the action was argued and submitted upon that theory, we denied a recovery. However, we are of the opinion that, even though the payee named in a check which has been paid upon a forged or unauthorized indorsement has no remedy against the drawee upon a contract on the theory that the drawee has accepted the check, nevertheless he has a remedy in tort. This conclusion we believe to be sound, for the reason that an unauthorized indorsement is in fact a nullity, and, when a bank takes a check upon such unauthorized indorsement, it takes it without the consent of the payee therein named, and, when it continues to hold this check and to exercise control of it against the wishes and demands of the payee, it becomes a converter thereof as against the rightful owner who is the payee named in the instrument. This doctrine seems to be in accord with the weight of authority. See Bentley, Murray & Co. v. LaSalle St. Savings Bank, 197 Ill. App. 322; Burstein v. People's Trust Co., 143 App. Div. 165, 127 N. Y. S. 1092; Morris & Bailey Steel Co. v. Bank of Pittsburgh, 277 Pa. 81, 120 A. 698; Kentucky Title Savings Bank & Trust Co. v. Dunavan, 205 Ky. 801, 266 S. W. 667; Louisville & N. R. R. Co. v. Citizen's & Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104, L. R. A. 1918C, 610; 25 Mich. Law Rev. 454; 31 Mich Law Rev. 565; 38 Harv. Law Rev. 857.

▐▐ We come now to the question of the authority of Baker. Section 1723, R. C. 1919, provides: "The signature of any party may be made by an agent duly authorized in writing. No particular form of written appointment is necessary for this purpose."

The above provision of our law was adopted as a part of our Uniform Negotiable Instruments Act. However, it differs materially from the provision contained in the general Uniform Negotiable Instruments Law. Section 19 of the general law, which our section 1723, R. C. 1919, supplants, reads as follows: "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

Because of the wording of our statute, this court has held that one purchasing notes from an agent not authorized in writing to indorse the notes is not a holder in due course. State Bank of Alcester v. Weeks, 45 S. D. 639, 189 N. W. 941; on rehearing, Id., 46 S. D. 93, 190 N. W. 806; Security Holding Company v. Christensen, 53 S. D. 37, 219 N. W. 949, 60 A. L. R. 1173; First National Bank v. Montgomery, 47 S. D. 97, 196 N. W. 95. In the case of Citizens' Bank & Trust Company v. McGaa, 48 S. D. 45, 201 N. W. 873, this court held that, in an action by the holder indorsee of the note against the indorser, wherein it appeared that the indorser's signature had been placed thereon by an agent, it was the indorsee's duty to ascertain the extent of the authority of this agent, and, having failed to exercise this precaution, the indorsee assumed the risk of the lack of authority in the agent. However, in that case it was pointed out that the record did not support plaintiff's contention that the principal whose name the agent indorsed was estopped from asserting the lack of authority in the agent. In the case of Commercial State Bank v. Iverson, 49 S. D. 466, 207 N. W. 471, it was held that the above-quoted section 1723, R. C. 1919, or the decision of State Bank of Alcester v. Weeks, supra, had no application to executive officers of a corporation. It will be noted that none of the above decisions go to the extent of holding that the principal of an agent who indorses commercial paper might not be estopped by its acts from denying the authority of the agent to indorse the paper in the manner in which he did. In this case the defendant pleaded that the acts of Baker's principal estopped it from asserting that Baker had no authority to place thereon the unqualified indorsement of the principal and receive the payment of the checks. We believe the record in this case is sufficient upon which to base an estoppel. There has always been recognized the doctrine that under certain facts and circumstances the principal may be estopped from denying the authority of the agent.

Our Code section 1257 provides: "Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess."

Section 1271 is as follows: "A principal is bound by the acts of his agent, under a merely ostensible authority, to those persons

only who have in good faith, and without ordinary negligence, incurred a liability, or parted with value, upon the faith thereof."

Strictly speaking, ostensible agency is no agency at all; it is in reality based entirely upon an estoppel. As stated in 2 C. J. 461: "Ostensible agency is really agency by estoppel, and it is more strictly accurate to say that liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it."

A reading of section 1271, above quoted, makes it apparent that the basis of this authority, which is referred to as an ostensible authority, is in reality an estoppel. We do not believe that section 1723, wherein it provides that the signature of any party on a negotiable instrument may be made by an agent duly authorized in writing, and the construction thereon placed by this court in the above-cited cases, was ever intended to deprive an indorsee from setting up the defense of estoppel. It might be that the said section 1723 would deprive the indorsee of proving a necessary authority as defined by section 1259, R. C. 1919, but upon this we need not speculate, because that is not now before us. However, in that situation the indorsee would be attempting to prove an actual agency, while here there is no such attempt, but simply a claim that, regardless of whether the agency existed in fact, the principal is not permitted to deny it. A good discussion is to be found in the case of Dispatch Printing Company v. National Bank of Commerce, 109 Minn. 440, 124 N. W. 236, 240, 50 L. R. A. (N. S.) 74, wherein the court differentiates between implied authority, apparent authority, and the rule of estoppel. The court says in that case:

"It is sufficient to estop the principal from disputing the authority in such cases that the course of dealing in the transaction of the principal's business, between the agent and the third persons, was such as to justify them in believing that he possessed the requisite authority, and to make it the duty of the principal to know the manner in which the agent was conducting his affairs. So that where it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent or the general course and manner in which he was conducting the business of the agency he is estopped as against innocent third persons from denying the power of the agent to act.

This doctrine is more or less commingled with apparent authority, though, strictly speaking, they are essentially different in this: Apparent authority is not founded in negligence of the principal, but in the conscious permission of acts beyond the powers granted, whereas the rule of estoppel has its basis in the negligence of the principal in failing properly to supervise and control the affairs of the agent."

We are of the opinion, therefore, that in spite of section 1723 this defendant is entitled to assert that the power company and this plaintiff as its assignee are estopped by the acts of the power company from denying the authority of Baker. Whether we say that the defendant can set up ostensible authority in Baker, as that authority is defined by our Code, or whether we say that Baker's principal is estopped to deny his authority, appears to us to be simply a distinction without any real difference, because, as pointed out above our Code provisions make the real basis of an ostensible authority the elements of an estoppel, and, as stated in Corpus Juris, it is more strictly accurate to say regarding ostensible agency that "liability arises for the acts of such a so-called agent, not because there is any agency, but because the principal will not be permitted to deny it." There is therefore no attempt to prove authority in Baker in a manner not authorized by section 1723; the defense only asserts that the plaintiff is estopped from denying such authority.

The trial court found:

"IX. That said manager was permitted to collect for merchandise, gas and service by check and in cash and to make such collections in either manner and to cash such checks when received, endorsed thereon in the name of the Montana-Dakota Power Company or its predecessor, and the said W. C. Baker, while acting as manager of said company continued to exercise and have the same authority as that had by his predecessor.

"X. That the said W. C. Baker and his predecessor collected checks and in some instances for very large amounts from this defendant bank, and the said Montana-Dakota Power Company accepted and retained the proceeds from such checks so collected and never complained or objected thereto."

We are of the opinion these finding are amply supported by the evidence. We therefore have this situation. The power com-

pany sent Baker to Sturgis as the manager of its local office, and permitted him generally to conduct and supervise the business of the company in the vicinity of Sturgis. Baker was further permitted to collect company accounts either by check or in cash. The company furnished Baker with a rubber stamp for the purpose of indorsing checks accepted by Baker in payment of company accounts. This rubber stamp contained an unqualified indorsement when stamped on the check. Baker, in his conduct of the business, had cashed and received payment from the defendant bank of other checks, payable to the power company, and the power company had accepted and retained the proceeds from such checks.

We believe all of the elements of estoppel are present. Certainly the conduct on behalf of the power company in placing Baker in charge at Sturgis, permitting him to collect accounts either in check or cash, and placing in his hands a stamp containing an unqualified indorsement for the purpose of indorsing checks received by him, was such conduct as would be very apt to mislead third persons to their prejudice in the exact manner in which the defendant bank was in this case misled and prejudiced. That this conduct on behalf of the power company was the result of the lack of ordinary care on its part is quite accurately indicated by the fact that immediately after this occurrence the stamp furnished by the company for the purpose of indorsing checks had added thereto the words "for deposit only." We think the record fairly established that the defendant in good faith and without ordinary negligence parted with the value of the checks to Baker because the power company by want of ordinary care allowed the defendant to believe that Baker was possessed of an authority to indorse the checks and receive the cash thereon, and that this plaintiff as assignee of the power company is now estopped from asserting the lack of authority in Baker.

The judgment and order appealed from are affirmed.

ROBERTS, P. J., and POLLEY and WARREN, JJ., concur.

CAMPBELL, J. (dissenting). Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act, etc. A. L. I. Restatement Agency, § 1. Ordinarily, such manifestation of consent may

be by written or spoken words or other conduct of the principal which reasonably interpreted causes the agent to believe that the principal desires him so to act on the principal's account, and apparent authority may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done. A. L. I. Restatement Agency, §§ 26, 27. With reference to negotiable instruments, however, we have in this state a statute (section 1723, R. C. 1919) which appears to exist in only one other jurisdiction (section 3720b-19, Carroll's Ky. Stat. 1930), providing that "the signature of any party may be made by an agent duly authorized in writing," which has been and continues to be construed by this court (State Bank v. Weeks [1922] 46 S. D. 93, 190 N. W. 806), as requiring authority to endorse to be a written authority. It must therefore follow, so far as concerns an agent's authority (either real or apparent) to indorse his principal's name in blank upon a check, that the principal's consent cannot be manifested (as would be the case but for our statute) "by written or spoken words or other conduct" which, reasonably interpreted, causes either the agent or a third person to believe that the principal desires the act to be done or consents to its being done in his behalf; by virtue of the statute, the consent of the principal must be manifested by an instrument in writing. That our law requires this particular authority to be manifested in this particular fashion must be deemed known to everyone, including respondent in this case. In view of this statute (and since appellant neither received nor retained any benefit whatever from the transaction), it would appear that no estoppel could arise unless appellant, by word or conduct, manifested to respondent that such writing existed and respondent relied and acted thereon. Cf. A. L. I. Restatement Agency, §§ 31, 167. I cannot discover in this record anything which seems to me to amount to any sort of representation by appellant to respondent that any such written authority existed. It seems to me that the majority opinion in this case (so far as concerns a principal) abrogates the statute requiring authority to indorse to be in writing and places indorsement of negotiable instruments right back under the general rule of agency (applicable where a statute does not otherwise provide) that authority may be derived from written or spoken words or conduct. Very possibly

our statute is unwise, but, if it is to be changed, I think it should be done by the Legislature.

It is my belief, therefore, that the judgment and order appealed from should be reversed.