NORTHWEST REALTY COMPANY, Appellant

v.

PEREZ, Respondent

PEREZ et al., Respondents

v.

NORTHWEST REALTY COMPANY et al., Appellants

(119 N.W.2d 114)

(File Nos. 9987, 9988.  Opinion filed January 8, 1963)

Rehearing denied February 5, 1963

Morrill & Morrill, Sturgis, for Appellants.

Sieler & Brady, Rapid City, for Respondents.

BIEGELMEIER, J. These appeals involve the authority of an attorney at law to compromise and settle claims and causes of action in favor of, and those made against, his client. At the time of the employment of John C. Searle to handle their legal affairs, two actions were pending: one by Northwest Realty Company against Perez to replevin the property covered by, and foreclosure of, a conditional sales contract; the other a counter suit by Perez and his wife against Northwest Realty and Reese, its president, for actual and exemplary damages claiming the unlawful conversion of personal property attached and garnisheed in the first action. The two challenged stipulations were signed by Searle. One of these settled the replevin suit by agreeing that action be dismissed with prejudice and the property described in the complaint to be "returned" to plaintiff Northwest Realty pursuant to the stipulation in the conversion action. The other stipulation provided for dismissal of the conversion action with prejudice, the release of the articles garnisheed in the hands of a storage company and "defendants agree to pay to the plaintiffs the sum of $2,500"; other details are hereafter mentioned. Both stipulations were dated October 27, 1961. The replevin stipulation was filed November 16, 1961 and an order entered thereon dismissing that action with prejudice and releasing the garnishment. The stipulation in the conversion action was filed November 21, 1961 but no judgment or order was then entered. Searle never reported to Reese the execution of these stipulations or his settlement of the actions. While he received amounts in excess of $1,000 monthly, for services rendered on itemized statements for over three months after his employment, differences arose between Searle and Reese over claimed failure to give status reports of matters he was handling, which resulted in Searle's terminating his relationship as his attorney by telegram November 9th. Searle, Reese and Northwest Realty offices were all located in the same city.

Reese learned of the settlements by having his employees and one David Morrill, another attorney employed by him in some other legal affairs, check the records. On November 24 he promptly moved to set aside both stipulations and the order of dismissal. In addition to affidavits, the circuit judge heard oral testimony. From orders denying the relief requested and a judgment entered after that hearing for the Perez plaintiffs in the conversion action

for $2,526.26 based on the stipulation, Northwest Realty and Reese appeal.

■■■ The rule is almost universal that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action. Dwight v. Hazlett, 107 W.Va. 192, 147 S.E. 877, 66 A.L.R. 102 and note page 107; 30 A.L.R.2d 945; 7 C.J.S. Attorney and Client § 105; 5 Am.Jur., Attorneys at Law, § 98. It applies to an agreement to accept less than the amount due or claimed by his client. Dwight v. Hazlett, supra; Weidenfeld v. Olson, 132 Neb. 303, 271 N.W. 806; or discharge or terminate the right of action by a dismissal with prejudice (the modern name for a retraxit) without special authority. Robinson v. Hiles, 119 Cal.App.2d 666, 260 P.2d 194; see also Mongeon v. Burkebile, 79 N.D. 234, 55 N.W.2d 445, 452 and Radosevich v. Pegues, 133 Colo. 148, 292 P.2d 741. An attorney employed to obtain a change of venue and serve an answer has no authority to withdraw the answer or consent to judgment by default and a judgment so entered must be vacated. Emerson-Brantingham Implement Co. v. Olson, 56 S. D. 132, 227 N.W. 567. The general principle that an attorney, merely by virtue of his employment, has no implied authority to release his client's claim or cause of action or compromise or settle his claim was recognized by this court, but held not to apply to the attorney's agreement that the sheriff hold a car under a levy pending final disposition of the action; this for the reason the resulting damage due to depreciation "was no part of the original claim, but a mere incident arising out of the proceedings * * *." Schievelbein v. Boos, 74 S.D. 428, 54 N.W.2d 172. The attorney is in effect a special agent limited in duty to the vigilant prosecution and defense of the rights of the client and not to bargain or contract them away. His employment to prosecute, defend or manage the cause for his client as an officer of a court of justice is inconsistent with the power to dismiss or agree to make payment of the claim and it is reasonable to require those added powers to be specially delegated. 66 A.L.R. 112; Bank of Glade Spring v. McEwen, 160 N.C. 414, 76 S.E. 222; Nothem v. Vonderhaar, 189 Iowa 43, 175 N.W. 967, 974. Mindful of their relationship as special agents with their professional and official status, the requirement is not only

reasonable, as the Iowa Supreme Court described it, but one that comports with the high standard to which the bar must adhere. The attorney may negotiate for and advise settlement of the controversy (Rules of Professional Conduct, No. 8) but the decision is the client's. The client, not the lawyer, is the litigant. Rule No. 17. The client owns the cause of action or owes the obligation. The powers of counsel are limited to those affecting the remedy and incidental proceedings. As to the exercise of those powers Rule 25 states "As far as possible, important agreements, affecting the rights of clients, should be reduced to writing * * *". This is not to say authority from a client to compromise need be in writing. Prudence, avoidance of misunderstanding and liability may make it advisable in many instances. The agreements here were not insignificant as the one case in small claims court which was settled by express authorization. The disputed stipulations were complex and important. They agreed to accept title to the household goods, release Perez from personal liability, pay storage and shipping charges of an unspecified amount, cancel the contract and stated this was in no way to reflect on Perez' credit rating by Northwest Realty and Reese. Some of these items were clearly outside the scope of the actions.

An examination of a number of opinions cited in the A.L.R. note indicates, in the main, counsel there had not transgressed beyond that authority to the extent here apparent. They support the custom followed by attorneys in this state as observed by the author of this opinion in over thirty years in the practice. It seldom appears an attorney alone has entered into an agreement binding his client to pay money to another. How this may happen is shown by the isolated instance described in Jones v. Noble, 3 Cal.App.2d 316, 39 P.2d 486. There attorneys of record representing several defendants in a personal injury action made a written offer to compromise the action for $5,000 based on authority from the insurance carrier of one defendant. Plaintiffs accepted the offer and delivered a written stipulation of dismissal with prejudice to plaintiffs' attorneys. The insurance carrier then handed the $5,000 draft to defendants' attorneys (evidently its counsel) who notified plaintiffs thereof. A day or two later when the draft was called for by plaintiffs' attorneys, they were informed the insurance company had told them not to deliver it. Plaintiffs then

sued all defendants in the personal injury action and the carrier on the agreement. The trial court entered judgment against all defendants. On appeal the court affirmed as to the insurance carrier. However, in accord with settled law, it reversed as to the other defendants as they had not specially authorized the agreement, saying, "mere employment of an attorney to represent a client in litigation does not carry with it the power to compromise such litigation." It appears Cohen v. Goldman, 85 R.I. 434, 132 A.2d 414, agrees with the foregoing authorities but under the facts there present relegated the client to a suit against the defaulting attorney. His liability may also result but it does not affect the client's right to relief in this proceeding.

A reading of the evidence compels the conclusion Searle had no special authority to settle these actions. The conversations were all vague and general; there was no "full" or "extensive discussion", punitive damages were "probably mentioned", but "no final details" agreed on. It is difficult to balance the testimony that in the middle of October Searle felt he had authority to settle the Perez case "in any amount he could settle for" against his statement to Reese about that time that as soon as he was able to get some firm commitments he would visit with him about them and his statement to counsel for Perez on October 23 or 24 that he would "have to check with Mr. Reese again" and the evidence that he never reported any of this to Reese even after he executed the challenged settlements. This conclusion was shared by the circuit judge who stated "it is quite apparent that counsel  *  *  *  did not have actual authority, either specific or general, to settle this lawsuit  *  *  *." It appears from the judge's observations in the transcript that, because the attorneys for Perez may have relied on Searle's keeping his clients advised and being authorized to settle as they were by their clients, coupled with Reese's general knowledge and associations with prior counsel on other matters, he was charged with making more inquiries with reference to the status of the Perez litigation. Therefore he did not feel Reese and Northwest Realty should be relieved from the stipulations. These facts do not affect appellants' rights, for after a controversy is in court it is in the attorney's hands and his duty to keep the clients advised of its status, time of trial and other appropriate action. Clients may rely on this.

They moved promptly to vacate and set them aside. This is an appropriate remedy. Dwight v. Hazlett, supra. Respondents are not injured in any way; they are placed in the same situation as before the stipulations were made, except they have benefited by having their property released from the garnishment. Each side will be required to prepare for trial as would have been necessary at that time. Huston v. Mitchell, 14 Serg. & R. 307, 16 Am.Dec. 506, quoted in Dwight v. Hazlett, supra.

Respondents' motion to dismiss the appeal in #9987 on the ground of insufficiency of assignments of error is denied. The relief prayed for by appellants should have been granted and the orders and judgments are reversed.

All the Judges concur.