PETERSEN, Appellant v. PETERSEN et al., Respondents

(245 N.W.2d 285)

(File No. 11736. Opinion filed September 3, 1976)

**Gary E. Davis, Johnson, Johnson & Eklund**, Gregory, for plaintiff and appellant.

**J. W. Grieves**, Winner, for defendants and respondents.

WOLLMAN, Justice.

This is an appeal from an order denying appellant's motion to set aside a judgment quieting title to and ordering the partition sale of some 505 acres of land in Mellette County, South Dakota. We affirm.

In June of 1945 appellant commenced an action for the partition and sale of the land in question. On November 24, 1945, the circuit court entered a judgment decreeing appellant to be the owner of a 15/18ths interest in the land; two of appellant's brothers, Chris and Knut Petersen, and a sister-in-law, Mary Petersen were adjudged to be the owners of the remaining 3/18ths interest in the land. The judgment further decreed that the land be sold at partition sale and that the real estate taxes that appellant had paid on the land during prior years should be held to be in full satisfaction of all rents that appellant might have been charged with for his use and occupancy of the land (the court having found that appellant had been in possession of the land since 1932).

The partition sale was never held, however, and appellant continued in possession of the land, apparently without incident, until sometime in 1972 when he asked Attorney William F. Day of Winner, South Dakota, to commence legal action to determine his rights in the land, Knut Petersen and Mary Petersen having died. Mr. Day in turn asked J. M. Grossenburg, who subsequently went into partnership with him, to work on the matter. Mr. Grossenburg prepared a legal memorandum for Mr. Day in which he concluded that appellant's claim of adverse possession against the owners of the remaining fractional interest in the land was not likely to be successful. After discussing the matter with Mr. Day and having several conferences with appellant, Mr. Grossenburg prepared and served a complaint asking that appellant be adjudged to be the sole owner of the land on the basis of his adverse possession of the same, or in the alternative that appellant be decreed to be the owner of a 600/720th interest in the land, that Chris Petersen and the heirs of Knut Petersen and Mary

Petersen (hereinafter referred to as defendants) be decreed to be the owners of their respective shares of the remaining fractional interest in the land, and that the land be partitioned among the parties according to their respective interests or sold if actual partition could not be had.

By letter dated July 9, 1974, Mr. Grossenburg informed appellant that the action was scheduled to be heard on the morning of July 23, 1974, and advised appellant to be present at the courthouse in White River, South Dakota, at that time. When appellant did not appear for trial at the appointed time, Mr. Grossenburg when to his home in White River. Appellant was not there, however (appellant testified at the hearing on the motion that he was lying ill at his ranch home on the morning of trial), and Mr. Grossenburg was unable to contact him by phone. Mr. Grossenburg returned to the courtroom and entered into a stipulation with defendants' attorney that appellant's claim of ownership based upon adverse possession be withdrawn, that the ownership of the land be decreed as set forth in appellant's complaint, that the trust officer of the Farmers State Bank in Winner be named as referee for the purpose of making a partition sale, and that the amount of taxes paid by appellant on defendants' share of the land should be offset against plaintiff's use of defendants' share of the land. Judgment was subsequently entered decreeing ownership of the land in the proportions set forth in appellant's complaint and ordering that a partition sale be held.

On July 24, 1974, Mr. Grossenburg sent appellant a two-page letter which fully and completely explained the actions that Mr. Grossenburg had taken during the trial on the preceding day. Mr. Grossenburg explained that he had withdrawn the claim of adverse possession of the 3/18ths interest because of the fact that in the 1945 action appellant had admitted that he did not own the 3/18ths interest and also because appellant had apparently written a letter in 1972 to one of the owners of the fractional interest asking how much she and the other heirs wanted for their interests in the land. Mr. Grossenburg explained in the letter, as he apparently had done in office conferences with appellant, that his purpose in including the adverse possession claim in the com-

plaint was to attempt to generate a reasonable settlement with the owners of the outstanding fractional interest. He pointed out that because all of the owners of the fractional interest were living it might be possible to negotiate a settlement with them, and that failing a settlement the land would be sold at a partition sale. The letter closed by asking appellant to advise Mr. Day and Mr. Grossenburg whether he was interested in buying the fractional shares owned by defendants or whether he desired that the property be sold and the proceeds divided.

On August 16, 1974, Mr. Grossenburg wrote to the trust officer who had been appointed as referee and asked him to proceed with the appraisal of the land; a copy of this letter was sent to appellant. Mr. Grossenburg subsequently sent a copy of the appraisal report to appellant and advised him that defendants' attorney was in the process of obtaining a settlement proposal from his clients.

By letter dated January 22, 1975, a copy of which was sent to appellant, Mr. Grossenburg advised defendants of the size of their undivided fractional interests and the amount of money those shares would be worth at the appraised price. The letter stated in part that:

"Our client, Hans Petersen, hereby offers to purchase your share in the 505 acres for the appraised amount which is listed below. If you want to accept this offer, please let us know immediately and we will send a Deed and once the Deed is returned to us signed by you, we will send a check for the appraised amount.

    *       *       *       *       *       *

"If all of the property can not be purchased in this manner, it will be sold at public auction and the proceeds distributed."

Mr. Grossenburg testified that this letter was sent after appellant had spent a good deal of time with him going over the frac-

tional interests and computing the amounts due each owner. Prior to the time the letter was sent appellant had told Mr. Grossenburg to, in Mr. Grossenburg's words,

" 'Definitely sell it if we can sell it for the appraised price.' And in fact I believe he had written a check — we had made an offer to one of the heirs for less than the appraised price and he gave me a check to hold in the file because that heir refused to take less than the appraised price."

On January 27, 1975, appellant wrote to Mr. Grossenburg and in substance stated that he did not like the way the paper (presumably the judgment) was made up and that he was going to go to court with them (presumably the defendants) if he could. Mr. Grossenburg testified that appellant had expressed unhappiness over the fact that he could not acquire full ownership of the property by adverse possession but had agreed with Mr. Grossenburg's advice that he could not get it by adverse possession and should attempt to resolve the matter by offering to pay defendants the appraised value for their interests in the property. Mr. Grossenburg testified that appellant's letter of January 27, 1975, was the first time that appellant had made any concrete objection to the sale of the property.

Sometime late in January of 1975 appellant told the judge who had heard the partition action that he wanted a trial in his case. After being informed of this fact, Mr. Grossenburg wrote to appellant and again fully set forth the reasons why he entered into the stipulation with counsel for defendants. Apparently appellant still was not satisfied with the explanation, for on February 10, 1975, Mr. Grossenburg advised appellant that he and Mr. Day were withdrawing as appellant's counsel and advised appellant to seek other counsel. Appellant did so and on May 8, 1975, his present counsel made a motion pursuant to SDCL 15-6-60(b) to set aside the judgment that had been entered in accordance with the July 23, 1974, stipulation. The trial court denied the motion on the grounds that appellant had failed to attend the trial on July 23, 1974, having received ample notice of the time and place of the hearing, and had failed to make a timely

request for a continuation of the trial or a rehearing of the matter; that the affidavit filed by appellant in support of his motion to set aside the judgment, together with his testimony at the hearing on the motion, established that no different result would be obtained on a rehearing with respect to appellant's claim of adverse possession;* and that the judgment entered subsequent to the July 23, 1974, hearing was consistent with the alternative relief sought by appellant in his complaint.

We conclude that the trial court properly denied appellant's motion. A fair reading of the record leads to the conclusion that appellant was fully and fairly advised by his trial counsel of the action that counsel had taken at the July 23, 1974, hearing; that appellant understood what Mr. Grossenburg had done, notwithstanding his claim at the hearing on the motion to set aside the judgment that he had difficulty in reading the correspondence and legal papers sent to him by his attorney; that he understood full well the nature of the relief that his counsel were praying for in the complaint; that he agreed with his counsel that the best course of action was to attempt to buy the outstanding fractional interests from the defendants at the appraised price; that he in fact made an offer to purchase those fractional interests; and that he first voiced specific objection to a partition sale of the property only when it became apparent that defendant Chris Petersen was unwilling to sell his fractional share at the appraised price. Indeed, appellant himself testified that, "They wouldn't settle with me when I offered what they appraised the land at and they wouldn't settle and now I am going to court with it" [all of the defendants but Chris Petersen had agreed to accept the appraised price for their interests].

It has been held that:

"Even an unauthorized compromise of an action by an attorney may be ratified, either impliedly or expressly, by the client, who is thereafter bound by it despite the initial defect." Gran v. City of St. Paul, 274 Minn. 220, 223, 143 N.W.2d 246, 249 (footnote omitted).

_____

* See Iverson v. Iverson, 87 S.D. 628, 213 N.W.2d 708.

Likewise it has been said that:

> "A client ratifies his attorney's act if he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority. In *Baumgartner v. Whinney*, 156 Pa.Super. 167, 171, 39 A.2d 738, 740, that court said, 'True, an attorney has no power, in the absence of express authority, to compromise or settle his client's claim. *North Whitehall Township v. Keller*, 100 Pa. 105. But a client may ratify his attorney's acts; and "an affirmance of an unauthorized transaction may be inferred from a failure to repudiate it": Restatement, Agency, § 94. Indeed, a client makes his attorney's act his own if he does not disavow it the first moment he receives knowledge that his attorney has transcended his authority. *Bredin v. Dubarry*, 14 Serg. & R.27; *Filby v. Miller*, 25 Pa. 264; *Andersen Coal M. Co. v. Sloan, Howell & Co.*, 46 Pa.Super. 320; *Smuckler v. DiNapoli*, 62 Pa.Super. 570.' Here there is no allegation of any repudiation of the stipulation until twenty months after appellant was acquainted with its content." Yarnall v. Yorkshire Worsted Mills, 370 Pa. 93, 87 A.2d 192, 193.

See also Navrides v. Zurich Insurance Company, 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637; Yahola Sand and Gravel Co. v. Marx , Okl., 358 P.2d 366; Annot. 30 A.L.R.2d 944; 7 Am.Jur.2d, Attorneys at Law, § 127.

We conclude that appellant acquiesced in the action taken by his counsel to stipulate that judgment be entered in accordance with the alternative prayer for relief set forth in the complaint and that although counsel may not have had specific authority to enter into the stipulation, appellant by his acts and words ratified the stipulation and the judgment entered in accordance therewith. Although it is true that appellant did not receive and retain tangible benefits in the nature of money from the judgment, cf. Yarnall v. Yorkshire Worsted Mills, supra, nor did defendants change their position in reliance upon the judgment, by authorizing his trial counsel to make a purchase offer based upon the determination of ownership set forth in the stipulated

judgment and in the amount of the appraisal resulting from the judgment appellant received at least intangible benefits from the stipulated judgment. Appellant would understandably have preferred to obtain the outstanding interest in the land for nothing. He was perhaps justifiably bitter towards his relatives for having left it to him to redeem the land from tax sale proceedings in the darkest days of the depression and drought. Whatever his personal feelings, however, appellant was not entitled to on the one hand rely upon the stipulated judgment as a mechanism for obtaining the ownership of the outstanding interest and on the other to disclaim the judgment when that attempt did not wholly succeed.

In holding that appellant ratified the actions of his trial counsel, we do not in any manner recede from the principles set forth in Northwest Realty Co. v. Perez, 80 S.D. 62, 119 N.W.2d 114, the facts of which are clearly distinguishable from those in the case at bar inasmuch as in that case counsel did not at any time inform his client that he had executed the stipulations for dismissal. Because the client moved to have the stipulations and order of dismissal set aside as soon as he learned of them, no element of ratification was present. As has been detailed above, however, in the instant case appellant's trial counsel gave appellant prompt written explanation of what had been done at the trial—an explanation that when coupled with the numerous pretrial and post trial conferences counsel had with appellant must surely have been completely comprehensible to appellant. Appellant chose to follow his trial counsel's recommendation to purchase defendants' interests in the land in accordance with the determination set forth in the judgment and by so doing ratified the stipulation and judgment by his conduct as surely as if he had signed the stipulation himself.

The order denying the motion to set aside the judgment is affirmed.

DUNN, C. J., and WINANS and COLER, JJ., concur.

ZASTROW, J., not having been a member of the court at the time of argument, took no part in this decision.