**FEDERAL LAND BANK OF OMAHA,**
A Corporation Plaintiff and Appellee,

v.

**Tom V. SULLIVAN and Judith A. Sullivan, Defendants and Appellants,**

and

**United States of America, acting through the Farmers Home Administration, Defendant.**

No. 15890.

Supreme Court of South Dakota.

Considered on Briefs April 28, 1988.

Decided Oct. 26, 1988.

Steve M. Johnson of Brady, Reade & Johnson, Yankton, for plaintiff and appellee.

John F. Murphy, Elk Point, for defendants and appellants.

Wanda Howey–Fox, U.S. Atty., Sioux Falls, for defendant.

SABERS, Justice.

Sullivans appeal from a judgment of foreclosure entered in favor of the Federal Land Bank of Omaha (FLB). We reverse.

### FACTS

FLB instituted this action to foreclose its mortgage against real estate owned by Sullivans. Prior to trial, Sullivans' attorney wrote a letter to FLB's attorney asking if there was a possibility that the case could be settled. On September 11, 1986, FLB's attorney replied with the following offer of settlement:

Thank you for your letter dated September 3rd, proposing a resolution of the above matter. *After consideration by my client,* we are willing to do the following:

We will accept a deed in lieu of proceeding with the foreclosure action upon the following conditions:

1. All 1985 real estate taxes must be paid;

2. The FmHA mortgage must be released;

3. There can be no other liens of whatsoever nature or kind against said property at the time of conveyance; and

4. The parties will execute a mutual release.

*My client has authorized me to extend this offer to you* which must be accepted within ten (10) days. I would believe that if you contacted the FmHA they would realize there is no equity in the property and release their mortgage. (emphasis added)

A copy of this letter was sent to Wayne Williamson, who is the assistant vice president of special accounts at the FLB office in Yankton, South Dakota.

On September 19, 1986, Sullivans accepted FLB's offer to settle the case. However, three weeks later FLB's attorney wrote to Sullivans' attorney stating: "Any compromises regarding Federal Land Bank loans must be cleared through Omaha. The proposed compromise was not approved and therefore we have been requested to proceed through the foreclosure process."

The case went to trial and FLB obtained a judgment of foreclosure. The trial court found that FLB was not bound by the offer made by its attorney and that FLB was not estopped to proceed despite the settlement agreement between the parties.

## ISSUE

Did the parties enter into a binding settlement agreement precluding the trial court's judgment of foreclosure?

## DECISION

Sullivans recognize the general rule that an attorney who is clothed with no authority other than that arising from his employment has no implied power by virtue of his general retainer to compromise and settle his client's claim or course of action. *Northwest Realty Co. v. Perez*, 80 S.D. 62, 119 N.W.2d 114 (1963). Nevertheless, Sullivans argue that an attorney who has or appears to have authority from his client can compromise and settle his client's claim. Sullivans contend that even if FLB's attorney had only ostensible authority to settle the case, FLB should be bound to the agreement since Sullivans acted in reliance upon the agreement.

In the law of agency, a principal will be liable for contracts made in its behalf by an agent if the agent was *authorized* to enter into the agreements. *Mueller v. Union Pacific*, 220 Neb. 742, 371 N.W.2d 732 (1985); 3 C.J.S. Agency § 408. This authority may be actual or ostensible. Actual authority is created by manifestations from the principal to the agent, SDCL 59–3–2, while ostensible authority is created when the principal allows a third person to believe the agent has authority to act on the principal's behalf. SDCL 59–3–3. Strictly speaking, ostensible agency is no agency at all; it is in reality based entirely on an estoppel. *Chleboun v. Varilek*, 81 S.D. 421, 136 N.W.2d 348 (1965); *Hartford Accident & I. Co. v. Bear Butte Valley Bank*, 63 S.D. 262, 257 N.W. 642 (1934). "[W]here it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent, or the general course and manner in which he was conducting the business of the agency, he is estopped as against innocent third persons from denying the power of the agent to act." *Hartford Accident & I. Co.*, 63 S.D. at 267, 257 N.W. at 645. If the agent had ostensible authority, the principal is bound by the acts of his agent "to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof." SDCL 59–6–3.

In this case, the trial court proceeded on the assumption that FLB's attorney had only ostensible authority to extend the offer of settlement. It found that FLB was not estopped by the settlement agreement since Sullivans did not incur a liability or part with any value in reliance on the agreement until after they received notice disclaiming the agreement. *See* SDCL 59–6–3. However, a careful review of the record indicates that FLB's attorney had *actual* authority to settle the case, thereby rendering the estoppel argument irrelevant.

It is well settled that actual authority can be created by the acquiescence of the

principal in the actions of the agent. *Kansas Educational Ass'n v. McMahan,* 76 F.2d 957 (10th Cir.1935); H. Reuschlein & W. Gregory, Agency and Partnership § 14 (1979). *See also* Restatement (Second) of Agency § 26 (1958). SDCL 59-3-2 states: "Actual authority is such as a principal intentionally confers upon the agent, or *intentionally or by want of ordinary care, allows the agent to believe himself to possess.*" (emphasis added) Here, FLB acquiesced in its attorney's actions, allowing the attorney to believe he possessed actual authority to settle the case. First, in a letter to Sullivans' attorney dated August 26, 1986, FLB's attorney invited settlement proposals from the Sullivans. A copy of this letter was sent to FLB officer Wayne Williamson, but FLB made no attempt to stop the negotiations or inform its attorney of limitations to his authority. Then in the letter dated September 11, 1986, set forth in the facts above, FLB's attorney made a concrete offer of settlement, indicating that his client was in complete agreement with the offer. Again, a copy of the letter was sent to FLB officer Williamson, but FLB failed to disavow the offer. The letter containing the settlement offer clearly shows the attorney's belief that he possessed authority to settle the case, and FLB's failure to act upon receipt of the letter constitutes acquiescence in the offer. Therefore, FLB's attorney had actual authority, as defined by SDCL 59-3-2, to settle the case, and the agreement is binding on the parties.

This result is consistent with the rulings of other courts which have faced the same issue. Of particular importance is *International Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49 (2d Cir.1979), in which Teleprompter's attorney wrote a letter to opposing counsel stating: "Teleprompter now wishes to settle the litigation ... on the terms which have been agreed upon." A copy of the letter was sent to Teleprompter's general counsel, who took no immediate action to disavow the settlement agreement. Later, Teleprompter argued that its attorney had no authority to bind it

to a settlement. The federal appeals court disagreed and upheld the agreement for the following reasons: 1) Teleprompter knew that the other party believed Teleprompter's attorney had authority to settle the matter and did nothing to correct the impression. 2) The attorney sent copies of all the correspondence to Teleprompter. 3) Teleprompter officials failed to disavow the attorney's actions even when the attorney sent copies of his letter announcing that a settlement had been reached. 592 F.2d at 55–56. We find the court's reasoning in *Teleprompter* to be persuasive and hereby adopt its rationale. *See also Capital Dredge and Dock v. City of Detroit,* 800 F.2d 525 (6th Cir.1986); *Corbesco, Inc. v. Local No. 542,* 620 F.Supp. 1239 (D.Delaware 1985); *Brumbelow v. Northern Propane Gas Co.,* 169 Ga.App. 816, 315 S.E.2d 11 (1984). FLB acquiesced in the actions herein and must abide by the agreement negotiated by its attorney.

REVERSED.

WUEST, C.J., and MILLER, J., concur.

MORGAN and HENDERSON, JJ., dissent.

MORGAN, Justice (dissenting).

I respectfully dissent from the majority opinion. We have long had the *Northwest Realty* rule. "The rule is almost universal that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action." *Northwest Realty Company v. Perez,* 80 S.D. 62, 65, 119 N.W.2d 114, 115 (1963) (*reaffirmed* in *Petersen v. Petersen,* 90 S.D. 666, 673, 245 N.W.2d 285, 288 (1976)). I think that the majority opinion shreds that rule. In my opinion, the trial court was correct when it found that the defendants had not parted with any value or incurred any obligation in reliance on the alleged settlement offer. Based on the statutory provisions, SDCL 59–6–3,* the

* SDCL 59–6–3 provides: "A principal is bound by     acts of his agent under ostensible authority, to

trial court was correct in concluding that FLB was not equitably estopped from foreclosing.

The reliance on *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49 (2d Cir.1979), is particularly inappropriate. In that case, just as here, the defendant in a patent infringement suit had initiated settlement discussions. That is about the only similarity. In *Teleprompter*, negotiations were carried on for a period of nine months during which time drafts and redrafts of settlement agreements were exchanged. At the eleventh hour, a third party involved in the negotiations withdrew. In an attempt to save the settlement, counsel for the defendant attempted to redraft the agreement, omitting references to the third party. Then, as the opinion specifically notes, new management for defendant corporation refused to proceed. That scenario, upon which the majority would decide this case, is obviously as different from the facts in this case as night is from day.

The total period of correspondence in this case was approximately two months. Only one month elapsed between the offer and the withdrawal. No documents were prepared, let alone exchanged. Most importantly, the offer was withdrawn, not on a change of management but apparently for the reason that Sullivans had failed to fully disclose their assets on a financial statement they had furnished to FLB.

Finally, I would point out that the *Teleprompter* opinion is self-limiting in that it is specifically noted therein that New York law governs the enforceability of the settlement agreement which was negotiated, consummated, and to be performed in New York and which was explicitly made subject to New York law. I think that South Dakota law, embodied in the statute above cited, should govern here. I would affirm the trial court.

HENDERSON, Justice (dissenting).

A judgment of foreclosure entered below, based on fact and correct in law,

should be sustained. Therefore, I respectfully dissent.

We see another erosion of the doctrine of stare decisis in the case before us. *Northwest Realty* has been the law of this state since 1963. There is no reason to depart from it. Basically, that rule is: An attorney may negotiate for and advise settlement of a controversy, but the decision is ultimately the client's. For recent cases, in accord with our precedent, see *Dillon v. City of Davenport*, 366 N.W.2d 918 (Iowa 1985); *Aetna Life & Cas. v. Anderson*, 310 N.W.2d 91 (Minn.1981); and *Smith v. Ganz*, 219 Neb. 432, 363 N.W.2d 526 (1985). The majority opinion obtains a result by not accepting the findings of fact and conclusions of law and by disregarding the testimony at trial.

In this case, the trial court entered a specific finding that Sullivans did not part with any value or incur any obligations in reliance upon the settlement offer. The trial court concluded that Sullivans did not meet the requirements of SDCL 59–6–3. Said statute provides: "A principal is bound by acts of his agent under ostensible authority, to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof."

This entire case may be said to rest upon the old *Hobelsberger* precedent. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W. 2d 455 (1970). Were the findings of fact clearly erroneous? Do you see that in the majority opinion? No. Again, I express that the majority opinion obtained a result by passing over a basic rule of appellate review in this Court. Narrowing this analysis, I point out: Sullivans maintain that the trial court's finding is clearly erroneous because they parted with consideration by incurring obligations in reliance upon the settlement offer. Sullivans claim these obligations were (1) payment of the 1985 real estate taxes, (2) time expended in obtaining a release of the FmHA mortgage, (3) removal of a grain bin from the

---

those persons only who have in good faith, and without negligence, incurred a liability or part-

ed with value upon the faith thereof."

property, and (4) time expended to obtain a grain bin lien release from the Agricultural Soil Conservation Service.

Let us scope these, mentally, to see if what Sullivans say is true. One, Sullivans admitted at trial that they were ultimately liable to pay the 1985 real estate taxes. Two, Sullivans (by the record) did not obtain the release of the FmHA mortgage until about three months *after* FLB refused to honor the settlement negotiated by its attorney. Three, Sullivans failed to obtain any bin lien release until eighteen days *after* the FLB refused to honor the settlement agreement. Four, no evidence appears in .the record to establish that the Sullivans ever removed the grain bin. The last argument is particularly hollow since the Sullivans had to remove the grain bin, in any event, because the FLB had no ownership interest in the bin.

Primary thrust of appellants' position is simply this: Appellee should be equitably estopped from being entitled to a judgment against the defendants, or from foreclosing its mortgages upon the mortgaged property, because of a settlement of the controversy. To prevail in their appeal, the Sullivans must establish equitable estoppel. This record does not establish equitable estoppel. Sullivans, as I have pointed out in the four matters above, failed to suffer prejudice or injury. I quote from *Cromwell v. Hosbrook*, 81 S.D. 324, 329, 134 N.W.2d 777, 780–81 (1965), wherein this Court, in a landmark case, expressed:

> In order to constitute an equitable estoppel, or estoppel in pais, false representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury.

In addition, the *Cromwell* Court held: "There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence." *Cromwell*, 81 S.D.

at 329, 134 N.W.2d at 781. Note that the degree of proof is "clear and convincing evidence." The majority opinion skirts all precedent in this Court to achieve a result by disregarding the rule in *Hobelsberger*, *Cromwell*, and *Northwest Realty*. Therefore, I cannot join the majority opinion and I also express that my academic sentiments are with Justice Morgan, who has likewise dissented in this case.