Heidi BALDWIN, Plaintiff and Appellee,

v.

NATIONAL COLLEGE, A DIVISION OF DLORAH, INC., a South Dakota Corporation, Defendant and Appellant,

and

Bonnie Flyte, Defendant.

No. 18689.

Supreme Court of South Dakota.

Considered on Briefs Dec. 8, 1994.

Decided Aug. 30, 1995.

---

Steven M. Christensen, Sturgis, for appellee.

Ronald W. Banks and Jerry D. Johnson of Banks, Johnson and Colbath Rapid City, for appellant.

AMUNDSON, Justice.

National College (College) appeals from a judgment awarding Heidi Baldwin (Baldwin) damages for breach of contract. We affirm in part, reverse in part, and remand.

## FACTS

Prior to December, 1992, Baldwin was employed with College as a full-time student field recruiter. Although she began her employment under a verbal contract in 1988, Baldwin signed a written employment agreement on October 17, 1991, proposed and drafted by Keith Carlyle (Carlyle), Director of Admissions. Baldwin and the other recruiters were given a copy of the proposed employment agreement to review and give their reactions to the compensation provision, which increased their wages.

The contract provided that Baldwin would receive a base salary of $20,000, plus a bonus

based on the number of students she enrolled. The bonus or "commission" was to be paid after the recruits completed four weeks of school. However, the contract provided that no "bonus" payments were to be paid if the employment agreement was terminated for any reason prior to the expiration of this four-week period.

Baldwin voluntarily terminated her employment with College on or around December 21, 1992. Baldwin claims she earned $1,600 in commissions before this termination. This figure represented Baldwin's compensation for recruiting a certain number of students who were still enrolled after four weeks of school. Concerned whether she would receive this commission, Baldwin asked her superiors about the money. In her exit interview on December 29, 1992, Bonnie Flyte (Flyte), Baldwin's supervisor, advised Baldwin that she would not be entitled to the commission under the contract. On January 5, 1993, Flyte incorporated her interpretation into a memorandum and sent it to Gus King (King), Academic Dean; Harold Stone (Stone), College President; and the Payroll Department.

Unsatisfied with this result, sometime in January, 1993, Baldwin had a meeting with Carlyle regarding the bonus payment. Carlyle had authority to approve bonus payments, drafted Baldwin's contract and was her supervisor prior to November, 1992. During the meeting, Carlyle assured Baldwin she was entitled to the $1,600 bonus. Carlyle sent memoranda to King and Stone on January 18, 1993, and March 10, 1993, indicating that Baldwin was entitled to the commission.

In addition to meeting with Carlyle, Baldwin met with King, who also reassured her that she would receive the money. A series of these meetings occurred between Baldwin, Carlyle, and King after Baldwin left College. Each time, Baldwin was reassured the "check was being cut," "[the check] would be deposited in her account when it was cut,"

and for [Baldwin] "not to worry ... that it would be paid." Despite these assurances, Baldwin received nothing. Frustrated with the situation, Baldwin finally sought legal counsel. College then took the position that Baldwin was not entitled to the commission.

After a trial to the court, the trial court found that Baldwin was entitled to the $1,600 commission and concluded that College's actions were "oppressive" in refusing payment.* The contract bonus provision was also held "oppressive and unconscionable." As a result, Baldwin's damages were doubled and College was barred from future enforcement of the provision. College appeals those rulings.

## ISSUES

I. DID COLLEGE'S REFUSAL TO PAY BALDWIN PURSUANT TO THE CONTRACT BONUS CLAUSE CONSTITUTE UNETHICAL AND UNLAWFUL PUNISHMENT OF BALDWIN FOR TERMINATING HER EMPLOYMENT WITH THE COLLEGE?

II. DO THE DOCTRINES OF ESTOPPEL OR WAIVER BAR COLLEGE FROM ENFORCING THE BONUS CLAUSE BASED ON REPRESENTATIONS BALDWIN EARNED THE BONUS?

III. DO THE TERMS OF THE BONUS CLAUSE CONSTITUTE AN UNENFORCEABLE CONTRACT OF ADHESION?

IV. WAS THE BONUS CLAUSE UNCONSCIONABLE AND, THEREFORE, UNENFORCEABLE UNDER SDCL 57A-2-302.

V. DID COLLEGE'S REFUSAL TO PAY BALDWIN UNDER THE BONUS CLAUSE CONSTITUTE OPPRESSIVE CONDUCT RESULTING IN A DOUBLE–DAMAGE AWARD?

---

\* The trial court's conclusion of law, number seven, provides:

> That pursuant to SDCL 60–11–7, the Court concludes that this amount should be doubled to the sum of $3200 because of the oppressive

conduct of National College in forcing the Plaintiff to retain counsel and refusing to honor its obligation throughout this matter. The Court does not conclude that National College is guilty of fraud or malice.

## STANDARD OF REVIEW

Before we address the substantive issues, we must first set forth the applicable standard of review. This case presents a mixed question of law and fact. We review a trial court's findings of fact under the clearly erroneous standard. *In re Kindle,* 509 N.W.2d 278, 283 (S.D.1993) (citations omitted). Accordingly, we will not disturb a lower court's findings unless they are clearly erroneous. The question becomes whether, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Id.* Once the facts are established in a contract dispute, we then look to see if a binding agreement exists under contract law. *Rusch v. Kauker,* 479 N.W.2d 496, 499 (S.D.1991) (citing *Permann v. Dept. of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113, 117 (S.D.1987)).

## DECISION

College argues the trial court was in error to award Baldwin damages arising from her employment contract bonus provision. College states Baldwin knowingly signed the contract, which plainly excepts bonus payments upon termination. Therefore, it alleges that Baldwin is not entitled to the $1,600 commission. We disagree.

### I. *Unambiguous Contract Provision.*

Baldwin's contract expressly provided for "bonus" payments based on the number of recruited students staying in school. The trial court found the words "bonus" and "commission" could be used interchangeably. This provision reads:

> (b) Bonus Plan. Employee will receive bonuses in accordance with the attached Compensation Plan. Bonuses will be paid upon the student's completion of his/her first four weeks of classes. *Employee will receive no bonus payments after termination of this agreement, regardless of which party terminates the agreement.* (Emphasis added.)

Baldwin claims she earned $1,600 in commissions prior to terminating her employment with College. Normally, these commissions would have been paid once the recruited students finished four weeks of classes. However, College argues that since Baldwin left her employment prior to her recruits completing the four-week period the language of the contract prevents Baldwin's bonus from vesting.

We agree with College that the language of the bonus provision unequivocally reads that no bonus payments will be made after termination. The language is unambiguous. In *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149 (S.D.1986), this court held "[i]t is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions must be given meaning if that can be consistently and reasonably done." *Id.* at 152 (citing *Dail v. Vodicka,* 89 S.D. 600, 604, 237 N.W.2d 7, 9 (1975)).

In addition, Baldwin testified that her duties as a recruiter continued after the student signed an application until he or she completed the fourth week of class. During that time, Baldwin's job was to do everything possible to help the student adjust and stay in school. Once the student finished the fourth week, the recruiter would then be entitled to the commission. According to the contract, Baldwin's rights to her bonus did not vest because she terminated her employment prior to the end of the four-week period.

■ The trial court found this provision "unconscionable" as punishment against an employee who wants to terminate employment with College. We do not agree. In *Rozeboom v. Northwestern Bell Tel. Co.,* 358 N.W.2d 241, 244 (S.D.1984), this court defined unconscionable contracts to be: "One-sided agreements whereby one party is left without a remedy for another party's breach[.]" Given the record, we do not find the bonus provision "one-sided." Baldwin had the opportunity to review the contract prior to signing and did so. Furthermore, it was Baldwin, not College, who terminated the agreement.

We also disagree with the trial court's characterization of the contract as an adhesion contract. The contract was not presented in a "take-it-or-leave-it" fashion. *Id.* at 242; *see also Green v. Clinic Masters, Inc.,* 272 N.W.2d 813, 815–16 (S.D.1978). Upon reviewing the contract "with special scrutiny," as required of documents in which one party did not participate in drafting, the language of the document and the circumstances surrounding this agreement do not constitute an adhesion contract. *Rozeboom,* 358 N.W.2d at 244–45.

## II. Waiver.

College argues the language of the contract controls and, since it was never amended to mirror College's representations, Baldwin is not entitled to the money. College cites SDCL 53–8–7, which provides: "A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, *and not otherwise.*" (Emphasis added.) Since Baldwin did not claim that a new written or oral contract had been formed, College argues the contract provision, as written, denies her recovery.

■ Although we have found the language of the contract clear and unambiguous, the trial court was still correct in awarding Baldwin's commission under the theory of waiver. "A waiver exists where one in possession of any right, whether conferred by law or contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right." *Jones v. Sully Buttes Schools,* 340 N.W.2d 697, 699 (S.D.1983); *Western Cas. and Sur. v. American Nat., Etc.,* 318 N.W.2d 126, 128 (S.D.1982). *See also Brookview Condo. v. Heltzer Enterprises,* 218 Cal. App.3d 502, 267 Cal.Rptr. 76 (1990); *Pierce v. Capitol Life Ins. Co.,* 806 P.2d 388 (Colo. App.1990). This court in *Endres v. Warriner,* 307 N.W.2d 146, 149 (S.D.1981), held that a waiver is not required to be in writing.

Carlyle drafted the contract and is presumed to know what it provided. Still, during numerous telephone and personal meetings with Baldwin, Carlyle made statements to the effect that the "check was being cut,"

"it would be deposited in her account when it was cut," "not to worry" and "that it would be paid." King reaffirmed Carlyle's assurances to Baldwin. He told her that: "Regardless of what [the] contract would say, [she] deserved the bonus check ... would be receiving it, and not to worry." Baldwin relied on these representations and readjusted her financial payments, holding off some creditors and incurring further debt, until her bonus arrived. Baldwin also testified that College had paid a previous recruiter, Jerry Thirstrup, the bonus after he terminated his employment with College. Mazie Brandt (Brandt), Executive Administrative Assistant to the President, testified that Thirstrup received his bonus payment but claimed it was an "error."

In response to the waiver issue, College argues that its employees' unauthorized actions should not bind the institution. College has a policy that checks over $1,000 must be signed by someone in the president's office. This reasoning is contrary to common principles of agency law. *See* 2A C.J.S. *Agency* § 157 (1972); 3 C.J.S. *Agency* § 408 (1973) ("apparent" or "ostensible" authority estops a principal from disclaiming liability when he allows his agent to act under the guise of proper authority).

■ This court, in *Federal Land Bank of Omaha v. Sullivan,* 430 N.W.2d 700 (S.D. 1988), discussed agency law in this context. According to *Sullivan,* an ostensible agent is one whose "authority is created when the principal allows a third person to believe the agent has authority to act on the principal's behalf." *Id.* at 701; SDCL 59–3–3.

"[W]here it appears that the principal knew, or by a proper supervision of the affairs of the agency ought to have known, of the acts of the agent, or the general course and manner in which he was conducting the business of the agency, he is estopped as against innocent third persons from denying the power of the agent to act."

*Sullivan,* 430 N.W.2d at 701 (quoting *Hartford Accident & I. Co. v. Bear Butte Valley Bank,* 63 S.D. 262, 267, 257 N.W. 642, 645 (1934)).

■ It is clear that Stone, College's president, was advised by memoranda of Baldwin's bonus controversy. Carlyle repeatedly wrote that Baldwin was entitled to the money, while his subordinates disagreed. College therefore cannot now argue that it was ignorant of Carlyle and King's representations. Furthermore, Carlyle expressed the sole purpose for his March 10, 1993, memorandum, acknowledging Baldwin's bonus, was "to fulfill a request by Dr. Stone and Mr. King." Here, the memorandum itself is proof that College allowed Carlyle the authority to determine Baldwin's entitlement.

In reviewing the testimony in this case, it is clear that Carlyle and King were ostensible agents of College with authority to determine entitlement to the bonus under the contract. College is now bound to pay Baldwin for their representations made to her. Relying on these representations, Baldwin changed her financial condition based on these agents' promises. Therefore, she is entitled to the $1,600 bonus.

*III. Double Damages.*

■ The trial court concluded College's conduct was "oppressive" and invoked double damages under SDCL 60–11–7. SDCL 60–11–7 provides: "In any action for the breach of an obligation to pay wages, where a private employer has been oppressive, fraudulent, or malicious, in his refusal to pay wages due to the employee, the measure of damages is double the amount of wages for which the employer is liable." "Oppressive" is defined as "unreasonably burdensome: unjustly severe, rigorous, or harsh." Websters Third New International Dictionary, 1584 (1976).

The findings of fact entered by the trial court certainly disclose a contract dispute between two parties. In reviewing these findings, there are no facts presented that College's conduct was "unjustly severe, rigorous, or harsh" when College was merely exercising its right to have a judicial determination made on the obligation under the contract. This court has consistently held that the conclusions of law, such as number seven on double damages, must find support in the findings. *Kindle*, 509 N.W.2d at 283; *Centrol, Inc. v. Morrow*, 489 N.W.2d 890, 894

(S.D.1992); *Knodel v. Board of Cnty. Comm'rs*, 269 N.W.2d 386, 390 (S.D.1978). A review of these findings does not provide that support. Therefore, the imposition of double damages in this case is inappropriate.

South Dakota has long recognized the principle that law and equity abhor a forfeiture. *Beitelspacher v. Winther*, 447 N.W.2d 347, 351–2 (S.D.1989); *cf.* Restatement 2d Contracts, § 229 (Excuse of a Condition to Avoid Forfeiture). To deny Heidi Baldwin her bonus at this juncture would result in an impermissible denial of a right to what she was told she had earned. Therefore, we affirm Baldwin's entitlement to $1,600 in commissions and remand for damages consistent with this opinion.

In light of our holding above, we need not reach the other issues in this case.

MILLER, C.J., KONENKAMP, J., and WUEST, Retired J., concur.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (dissenting).

The majority states the contract provided no bonus payments were to be made if the employment agreement was terminated for any reason prior to the expiration of the four-week period. Baldwin terminated her employment after inquiring and being told that "she would not be entitled to the commission under the contract." She terminated anyway. There was no reliance because there was no misrepresentation on which to rely. The majority then states:

> We agree with college that the language of the bonus provision unequivocally reads that no bonus payments will be made after termination. The language is unambiguous.

In other words, Baldwin terminated knowing she had no right to the bonus. Despite that, the majority unduly strains to find that "waiver" creates something out of nothing

and now she is entitled to the $1,600.00 bonus. It is also ironic that this is the same court * who only four months ago, in *Owens v. Moyes,* 530 N.W.2d 663 (S.D.1995) affirmed the trial court holding that a person who admittedly owed $5,000.00 was not liable because the deal was not in writing and was therefore unenforceable under the statute of frauds (SDCL 53–8–2).

---

* Justice Gilbertson was not a member of the court at the time *Owens v. Moyes* was submitted and he did not participate.